# EXHIBIT "A"

IN THE CIRCUIT COURT FOR THE THIRTEENTH JUDICIAL CIRCUIT
IN AND FOR HILLSBOROUGH COUNTY, FLORIDA
CIRCUIT CIVIL DIVISION

JACQUELYN HACKETT,

        Plaintiff,                        CASE NO.:

vs.

TOTAL PLASTICS RESOURCES, LLC
f/k/a TOTAL PLASTICS, INTL.,

        Defendant.
_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW, the Plaintiff, JACQUELYN HACKETT (hereinafter referred to as "Plaintiff" or "HACKETT"), by and through her undersigned counsel, and files this, her action for damages against Defendant, TOTAL PLASTICS RESOURCES, LLC f/k/a TOTAL PLASTICS, INC. (hereinafter referred to as "Defendant" or "TPR"), and as grounds therefore, alleges as follows:

### JURISDICTION AND VENUE

1. This is an action for damages in excess of $30,000.00, exclusive of costs, interest, and attorney's fees.

2. At all times material to this action, Plaintiff was employed by Defendant, and performed her various duties for said employer at a facility located in Hillsborough County, Florida.

3. Plaintiff invokes this Court's jurisdiction to determine her claims under Fla. Stat., Chapter 760 (sex harassment, hostile work environment, retaliation) and common law claim of negligent supervision/ training/ retention against Defendant.

## PARTIES

4. Plaintiff is a citizen of the United States and resident of Hillsborough County, Florida, and is female.

5. TPR is a foreign limited liability company, headquartered in Texas but doing extensive business in the State of Florida.

## PROCEDURAL BACKGROUND

6. Plaintiff complied with the administrative prerequisites by filing charges of discrimination based on sex and retaliation with the Equal Employment Opportunity Commission (EEOC) and Florida Commission on Human Relations on or about January 30, 2020 and December 8, 2020, respectively.

7. A Notice of Right to Sue was issued and mailed on or about April 28, 2021. A copy of the Dismissal and Notice of Rights is attached hereto and incorporated by reference as **Exhibit "A"**.

8. Plaintiff filed this Complaint within ninety (90) days of receipt of the Notice of Right to Sue.

## FACTS

9. Plaintiff had been continuously employed by TPR since January 2007 and was terminated on September 17, 2020. Plaintiff was an inside sales representative for TPR.

10. Plaintiff has always performed her job in a competent manner or better. In fact, Plaintiff was dedicated, professional, and conducted herself honestly and with integrity.

11. During nearly the entirety of Plaintiff's employment (14 years), including within 180 days of filing her Charge of Discrimination, she was treated differently on the account of her gender and was subject to frequent, severe, and pervasive sexual harassment from her

immediate supervisor, Michael Gordon Motley (hereinafter "Motley"), thus creating a hostile work environment that existed until Plaintiff's termination.

12. Plaintiff repeatedly complained of and reported the sexual harassment to Human Resources of TPR.

13. When Plaintiff started working for TPR in January 2007, she was immediately subject to a hostile work environment based on sex and sex harassment, created by Motley, her immediate supervisor. The harassment continued throughout her employment.

14. Prior to being hired, Plaintiff interviewed with Motley for the Inside Sales Representative position (ISR). It was the first time that Plaintiff met him although for years prior, Plaintiff had been ordering material from Motley from a company called Freddie's Plastics. Upon Plaintiff's arrival for the initial interview, the first thing Motley said to her was, "Do I look as good as you expected?", or words very close to that effect. Plaintiff remained silent and then Motley said he must not be as "good looking" as Plaintiff expected.

15. Throughout Plaintiff's entire time working under Motley, he frequently patted her back, rubbed her arm, rubbed her shoulders, hugged her without solicitation, and made the comment, "Now don't call HR on me, it doesn't mean anything". Plaintiff informed him that his conduct was unwelcomed, but to no avail.

16. Plaintiff always felt uncomfortable and always tried to make a point of staying arm's length away from Motley to reduce the harassment. Plaintiff was a single mom, and she tried to ignore this behavior, because she needed the job and benefits to support her family. Plaintiff was fearful of retaliation.

17. Over the years, Plaintiff observed Motley mistreating and ridiculing female employees[1]. He especially did not like women challenging him professionally. When this would happen, he would belittle, ridicule, harass or embarrass that woman to the point of termination or resignation. His mannerisms would become hostile, and his comments would become very retaliatory. Plaintiff never observed such behavior directed to male subordinates or co-workers.

18. Motley favored his male subordinates and often provided them time off or permitted tardiness when such conduct by women would subject them to utilizing PTO, or to discipline and ridicule.

19. A prime early example of male preferential treatment occurred on or about June 18, 2011. Plaintiff's sister-in-law was in an extremely bad car accident and Plaintiff took June 20 through June 22 off to be with her family. Contrary to how he treated male co-workers, when Plaintiff returned to the office Motley required her to turn in a vacation request to cover the days missed. When Plaintiff commented to Motley on the disparity of treatment, he replied that he docks everyone for time off, which was untrue. Nonetheless, Plaintiff then filled out a vacation request as demanded and turned it in.

20. A few days later Plaintiff found an envelope in her tray that said, "Happy Birthday", but when she opened it, inside was the vacation request that she had turned in, torn in half.

21. As an early example of the condescending and demeaning manner in which Motley talked to women that challenged his thinking was on or about August 14, 2011. Plaintiff went into

---

[1] There was a co-worker, Michelle, that Motley treated more favorably to other female workers, and it appears they have a relationship of some sort between them. With respect to all other females he interacts with, he treats differently, and more poorly, than male counterparts.

to Motley's office to question his approach to handling a customer named Kent Manufacturing. When Plaintiff was professionally discussing her historical approach to handling this account that differed from Motley's desired approach, he threatened to remove the account from Plaintiff. Motley never made similar threats or exhibited the same belittling behavior to male subordinates, clearly indicating that opinions of women in the workplace had no value.

22. Motley rarely permitted Plaintiff to leave work at 5:00pm when her shift was over (Motley had frequently kept Plaintiff well after 5:00pm often causing her to change her personal plans to accommodate), whereas he did not do this to his male subordinates. Plaintiff was "micromanaged", while the men in the office are given more time and freedom to do their jobs.

23. Plaintiff and other female ISRs were disfavored by Motley to earn or be assigned new accounts. Motley most frequently gave new accounts to a male ISR, Shawn Brandt. For example, on or about February 6, 2012, Mr. Brandt received 20 or so new accounts with no other female ISR (including Plaintiff) receiving any.

24. Plaintiff was treated differently than male counterparts when involving annual employment reviews that normally took place in January-March time frame. Plaintiff was nearly always reviewed last and nearly always had to remind Motley to get the task completed. For example, in February 2012, Plaintiff approached Motley and asked him about her yearly review – and not withstanding Motley's response of, "thank you for reminding me", Plaintiff's review would still take a long time approved. In contrast, male counterparts had already received their respective reviews weeks earlier. When Plaintiff's review was finally

scheduled, she was required to stay after working hours again, unlike the men in the review process.

25. Motley added to the hostile work environment for Plaintiff and the female staff by *openly* demonstrating harassing behavior to subordinate females. For example, in 2013, apparently as a result of a disagreement with Gail Hooten (Buyer), Motley began openly "nitpicking" everything she did. He openly criticized her work, ridiculed her, talked down to her and belittled her.  Motley eventually fired her.

26. Prior to Ms. Hooten's termination, Motley came to Plaintiff's desk and asked her to come with him. They went over to Ms. Hooten's cubicle, and to openly embarrass her and to unnecessarily place Plaintiff "in the middle", Motley asked Ms. Hooten for her keys to the office and mailbox. After she handed him her keys, Motley immediately turned to Plaintiff and handed them to her.  Ms. Hooten was really upset with Plaintiff about this, as though Plaintiff was directly involved in doing it.  This affected Plaintiff's ability to do her job as Motley unnecessarily created a lot of hostility between Plaintiff and Ms. Hooten because she felt Plaintiff was involved in the decision to take her keys. Plaintiff then naturally had extreme difficulty in completing tasks that required Ms. Hooten's help or assistance.

27. Plaintiff advised Motley several times about her work she turned into Ms. Hooten not being completed in a timely manner and Motley never corrected the situation.  He only responded with, "Don't worry about it, it won't happen to you much longer" or "It will only be for a little longer", indicating either his desire to fire Ms. Hooten or force her to resign, as was his pattern and practice.

28. As stated before, Motley did not like when a woman professionally challenged him or asked

him to explain the reasons behind his decisions. His very aggressive, hostile and retaliatory mannerisms were mostly expressed in the open office area, where everyone sat in cubicles that are about 4-1/2 foot high.

29. Motley intentionally set Plaintiff up to fail on more than one occasion. At no time while working for TPR had Plaintiff witnessed this behavior towards men. An example of this occurred on August 8, 2014. Defendant was very short-handed due to Mr. Brandt leaving the company. Plaintiff asked Motley three times during the sales meeting if he could bring in a "temp" to assist with answering the phones. Each time he replied to Plaintiff "NO!", in a very hostile, harsh tone in front of two male employees. Later that day one of Plaintiff's larger accounts, Jabil, called in and Motley took the call. He "overpromised" that TPR could complete a very complicated order in an impossible short amount of time. Rather than explain the conversation he had with Jabil to Plaintiff, he refused to give Plaintiff any details or provide any guidance. Without such information (intentionally withheld), it strained Plaintiff's relationship with one of her largest accounts. As part of his pattern and practice, Motley retaliated against Plaintiff because she is a woman who dared speaking up to him in the meeting. Motley intentionally hindered Plaintiff from performing her job because he was withholding information. Motley had never done this to any other male ISR in the Tampa branch.

30. Another example of setting up Plaintiff to fail occurred on or about September 26, 2014. Despite Plaintiff's intense workload, Motley required that Plaintiff train Michelle Tallent since she began working on September 8, 2014. Notwithstanding that Plaintiff told Motley that she was busy preparing safety notes, processing four days of credit card transactions, completing quotes and inputting orders, he still required to train the new employee by

September 30, 2014, and if she did not like it, to "decide what was important to you". Plaintiff's male counterpart, Michael Tafflinger, was never given the same tasks, was assigned only to do his ISR work, and rarely was tasked with training others.

31. Throughout Plaintiff's employment, Motley's favoritism towards males and his retaliation and ridicule towards females went unabated. For example, on April 13, 2015 Motley scheduled TPR's yearly evaluations. Plaintiff's male counterparts' evaluations were completed during normal business hours. Motley scheduled Plaintiff's evaluation for 5:15pm. Motley refused to allow Plaintiff to leave until 6 PM, once again knowingly interfering with her plans with her family.

32. Motley often insisted on Plaintiff being alone with him in the office. Given his unwelcomed sexual advances, Plaintiff repeatedly told Motley she did not like being required to stay after work when no one else is in the office except him. Motley still required this of Plaintiff because she is a woman and could intimidate her.

33. To his woman subordinates, during the course of Plaintiff's entire tenure, Motley strove to find something wrong in every little thing in order to mentally to break them down. If a female questioned his authority, he retaliated. Plaintiff never saw him do this to any of the men in the office. As a result, over time Plaintiff began having difficulties performing her job from stress because if she spoke up or corrected him, she was chastised or punished for it.

34. On or about December 15, 2015, Plaintiff learned that a male ISR did a quote that was entirely too high. Plaintiff took it to Motley and Motley told her to fix it. She called the account and managed to maintain the customer. Motley said nothing to this male ISR about

the mistake in pricing – but Plaintiff later learned that Motley did the pricing on the quote. Motley had never shown such favoritism to Plaintiff.

35. Motley violated company policy on a regular basis when he clocked men in or out. Plaintiff is personally aware when men have left early or came in late that did not punch in or out. Yet she had been consistently targeted and made to use PTO or utilize her lunch break each and every time she was late or had to leave early. For example, on March 10, 2017, Plaintiff had to leave the office at 10:38am, but was ordered to use her PTO. On March 13, 2017 Plaintiff came in at 9:00am and left at 4:00pm and was forced to use 2 hours of PTO. Plaintiff's male counterparts were not forced to use PTO under the same or similar circumstances. In fact, upon information and belief, a male ISR had missed 17 days without suffering any attendance consequence.

36. Over time, Motley, on a daily basis, escalated his controlling behavior over Plaintiff and curtailed and/or hindered her abilities to do her job. For example, because Plaintiff is a woman, Motley sabotaged Plaintiff's below-mentioned account:

   a. Plastics America is an account that had done over $100,000.00 in business with Plaintiff in the past. Because the account was a "slow pay", Motley did not like the account and had suggested to Plaintiff to let it go. The account had originally gotten behind when Plaintiff received it from a male ISR, and she developed a plan with them to collect the balance -- each order they placed was over paid and the overage applied to the outstanding amount. Plaintiff saved the account and the relationship. However, when she was out of the office, Plastics America called to place an order and Motley told the male ISR to tell them that they had to pay the entire balance

before they could buy again from TPR. As a result, they stopped doing business with TPR and Plaintiff lost the account.

37. On August 2, 2018, Plaintiff learned of a Branch Manager's position available in Pittsburg. She approached Motley (per TPR handbook) and told him she was interested in the position.

38. Plaintiff followed up with Stephanie (Pittsburgh TPR manager) several times because she said that Plaintiff scored very well on her tests and her interview. Notwithstanding being highly qualified for the position, Plaintiff was later informed that they went "in another direction" and did not get the promotion. This occurred because Motley, for no other reason that Plaintiff is a woman, informed the company he did not recommend Plaintiff for this position. Plaintiff complained to HR about Motley and about her failure to be promoted.

39. Soon after Plaintiff complained about being denied the promotion, Motley's mistreatment of Plaintiff escalated noticeably, in a campaign to force her to resign. Without justification, he criticized Plaintiff's sales, frequently interrupted her while she was on the phone with her customers and made comments to Plaintiff that other companies are hiring (inferring "why don't you just quit?"). Over last year of Plaintiff's employment, Motley's treatment of her became progressively worse. He not only openly embarrassed Plaintiff in front of co-workers, but he had cost Plaintiff accounts thereby hindering her ability to do her job.

40. Before Plaintiff applied for the promotion, when Motley had to leave the office, he let Plaintiff know because she was his back up, but that stopped when she applied for the branch manager's position. To make it even more difficult for Plaintiff to do her job, Motley did everything in his power to avoid giving her needed information.

41. In 2019, Plaintiff was again required to receive her annual evaluation after hours when male counterparts were not.

42. In 2019, Motley suddenly took over Plaintiff's duties of "ordering", when in the past it was Plaintiff's responsibility to order all the acrylics and Orthotic & Prosthetic Material. Yet, Motley still had to consistently ask Plaintiff what she thought needed to be ordered.

43. Lynn Worley ("Worley") started working for TPR as an ISR on June 24, 2019. Within days, Worley informed Plaintiff that she noted Motley treats all the woman in the office like they're stupid.

44. Over the ensuing weeks, and months, Worley complained to Plaintiff that Motley was sexually harassing her in the workplace. Worley advised Plaintiff, among other things, that Motley forced her sit intimately close to him, clearly violating her personal space.

45. Motley frequently micromanaged his women subordinates, even demanding what to say on a call or write in an email. He openly and condescendingly repeated the same thing over and over as though the woman is not intelligent enough. He did not exhibit this behavior to male co-workers.

46. In September 2019, another promotion became available to Plaintiff. Motley came to Plaintiff's desk and in front of the other female ISRs, said in clearly very snarky tone to Plaintiff that the manager in Harrisburg was relocating to Orlando and that his position would be available, did she want to send them her resume? His condescending tone was a clear indication that he disapproved of any of Plaintiff's efforts to get promoted.

47. Motley frequently stood in the outer office and made suggestive and embarrassing comments about female employees.

   a. On September 29, 2019, Motley came out of his office and was talking about his Labor Day weekend plans to only his female ISRs, when out of nowhere he stated that he was going to "Lynn's house for a cookout and hang out with her by the pool".

       Worley looked up shocked, and said, "Oh no you are not. I'm not even going to be home".

   b. On or about Halloween 2019, Motley came in the office and said that he had seen a broomstick parked out front and wanted to know who it belonged to. When someone said, "Jackie" (Plaintiff), Motley laughed.

   c. On or about October 16, 2019, after returning from Indiana on a business trip, Motley came out of his office and stood in front of Worley's cubicle and once again began talking to the females in the office. He stated cold it was in Indiana and how he wished he had brought his boots with him, but he couldn't do that because he left his boots at Worley's house (inferring he spent time or an overnight at her house). Worley made a formal complaint against Motley for sexual harassment and innuendos. She said she felt that Motley was insinuating that they were having an affair and he was sleeping over.

48. In late 2019, Motley continued to enforce a different set of standards and rules for men as compared to women in the office, including but not limited to, (a) allowing men to miss work without taking PTO, whereas women were required to take PTO, including Plaintiff; (b) micromanaging Plaintiff's accounts and even jeopardizing her relationships to her customers that resulted in lost accounts and revenue attributable to her.

49. Plaintiff observed Motley's sexually harassing behavior toward Worley. Motley's behavior towards Worley started very early and has escalated through the months, including leering and inappropriate touching.

50. On or about November 2019 Plaintiff complained in writing to Human Resources Director Amanda Crux regarding the sex harassment and hostile work environment. Notwithstanding

her complaint, and the supporting evidence, TPR either did not mete out discipline or did not provide sufficient discipline to Motley, because his conduct remained unabated.

51. On September 17, 2020 TPR terminated Plaintiff in retaliation for pursuing her rights to be free from gender discrimination and sexual harassment.

52. Notwithstanding Plaintiff's more than competent performance, TPR discriminated against and retaliated against her when terminating her.

53. Plaintiff's gender and her complaints of unfair treatment on the account of her gender, are factors in TPR, via their agents, representatives, and employees' decision to create a hostile work environment.

54. The gender of Plaintiff was a factor which made a difference in her treatment by TPR, via their agents, representatives, and employees.

55. Plaintiff has suffered trauma as a result of being exposed to a gender discrimination and sex harassment environment.

56. Plaintiff has suffered trauma as a result of being terminated on the basis of her pursuing her gender discrimination and sex harassment claims.

57. Plaintiff performed or satisfied all conditions precedent to the filing of this action or said conditions have occurred or been waived.

58. Plaintiff has retained the services of the undersigned counsel and is obligated to pay him a reasonable attorney's fee. Plaintiff seeks an award of attorney's fees, pursuant to Florida Statute, § 760.11, and other applicable statutes.

**DEMAND FOR TRIAL BY JURY**

59. Plaintiff respectfully demands a trial by jury for all issues so triable.

## COUNT I - FCRA

60. Plaintiff realleges and incorporates by reference Paragraphs 1 through 59, as though set forth herein verbatim.

61. This action is based on a violation of the Florida Statute, Chapter 760, Florida Civil Rights Act.

62. TPR, via its agents, representatives, and employees, discriminated against Plaintiff (hostile work environment and sex harassment) because of her gender.

63. When Plaintiff complained about the unlawful, unfair and improper treatment and discrimination, TPR, via its agents, representatives, and employees created a hostile work environment.

64. As a result of TPR's unlawful employment practices, Plaintiff has been damaged.

WHEREFORE, the Plaintiff, JACQUELYN HACKETT, respectfully prays that this Honorable Court take jurisdiction of the subject matter and parties hereto, and grant his request for trial by jury, declare that Defendant violated the rights of Plaintiff as protected by the laws of the State of Florida, and award back pay, front pay, prejudgment interest, compensatory damages for mental anguish, emotional distress, embarrassment, humiliation, loss of enjoyment of life, loss of dignity, impairment of working ability and earning capacity and loss of reputation, reasonable attorney's fees pursuant to Florida Statute, § 760.11 and costs, and such other relief as deemed appropriate by this Court.

## COUNT II
## NEGLIGENT SUPERVISION/TRAINING/RETENTION

65. Plaintiff realleges and incorporates by reference Paragraphs 1 through 59 as though set forth herein verbatim.

66. This is a common law action of negligent supervision/training/retention.

67. During the course of Plaintiff's employment with TPR, TPR via its agents, representatives, and employees in supervisory or management positions, had a duty to Plaintiff to properly supervise, train and discipline her supervisors regarding the legal responsibilities of an employer under Florida law regarding gender discrimination and disparate treatment.

68. During the course of Plaintiff's employment with TPR, TPR via its agents, representatives, and employees in supervisory or management positions, failed in its duty to properly supervise, train and discipline Plaintiff's supervisors regarding the legal responsibilities of an employer under Florida law regarding disability discrimination and disparate treatment.

69. As a direct and proximate result of TPR's negligent breach of duty, Plaintiff suffered permanent and/or continuing injuries and sustained the following past and future damages:

    a. Mental pain;

    b. Severe emotional distress in the form of fear, nervousness, anxiety, worry and indignity;

    c. Embarrassment;

    d. Humiliation;

    e. Loss of enjoyment of life;

    f. Impairment of working ability and earning capacity;

    g. Loss of dignity; and

    h. Future pay.

WHEREFORE, the Plaintiff respectfully prays that this Honorable Court take jurisdiction of the subject matter and parties hereto, grant his request for trial by jury, enter judgment against TPR, and award compensatory damages, consequential damages, costs, interest and such other

relief as deemed appropriate by this Court.

## COUNT III
## FCRA (RETALIATION)

70. Plaintiff realleges and incorporates by reference Paragraphs 1 through 59, as though set forth herein verbatim.

71. This action is based on a violation of the Florida Statute, Chapter 760, Florida Civil Rights Act.

72. TPR engaged in reprisal against Plaintiff because she complained of discrimination.

73. Plaintiff was subject to severe disparate treatment without good cause.

74. TPR, via its agents, representatives or employees engaged in unlawful employment practices prohibited by Florida Statutes, Chapter 760 by intentionally and willfully taking adverse employment action against Plaintiff, including but not necessarily limited to, creating a hostile work environment.

75. TPR, via its agents, representatives or employees acted maliciously and with reckless indifference to Plaintiff's protected rights, by retaliating against her for complaining of discrimination.

76. As a result of TPR's unlawful employment practices, Plaintiff has been damaged.

WHEREFORE, the Plaintiff respectfully prays that this Honorable Court take jurisdiction of the subject matter and parties hereto, and grant her request for trial by jury, declare that Defendant violated the rights of Plaintiff as protected by the laws of the State of Florida, and award back pay, front pay, prejudgment interest, compensatory damages for mental anguish, emotional distress, embarrassment, humiliation, loss of enjoyment of life, loss of dignity, impairment of working ability and earning capacity and loss of reputation, reasonable attorney's fees pursuant to

Florida Statute, § 760.11 and costs, and such other relief as deemed appropriate by this Court.

Respectfully submitted, this 24th day of July, 2021.

                                                  s/Richard F. Meyers
                                           Richard F. Meyers, Esquire
                                           THE MEYERS FIRM, P.A.
                                           P.O. Box 16308
                                           Temple Terrace, Florida 33687
                                           (813)985-6550
                                           (813)985-5282 (fax)
                                           Email: rmeyers@meyersfirm.com
                                           Fla. Bar No.  0893315
                                           Attorney for Plaintiff

# EXHIBIT "A"

EEOC Form 161 (11/2020)     U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

To: Jacquelyn Hackett
2204 N. Johnson St.
Plant City, FL 33563

From: Tampa Field Office
501 East Polk Street
Room 1000
Tampa, FL 33602

[ ] *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 511-2020-01997 | Jesus Gonzalez, Investigator | (813) 202-7904 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[X] The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other *(briefly state)*

- **NOTICE OF SUIT RIGHTS -**
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

*Evangeline Hawthorne*     April 28, 2021
*(Date Issued)*

Enclosures(s)     **Evangeline Hawthorne, Director**

cc: Samantha E. Dunton-Gallagher
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
Two Datran Center
9130 S. Dadeland Boulevard Suite 1625
Miami, FL 33156

Richard F. Meyers
THE MEYERS FIRM, P.A.
P.O. Box 16308
Temple Terrance, FL 33687